**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

**EVAN VARGO**
**3115 Joyners Bridge Road**
**Carrsville, Virginia 23315**

**and**

**JAMES COX**
**112 Spivey Farm Lane**
**Suffolk, Virginia 23438**

**and**

**KENNETH STEWART**
**2807 Victoria Avenue, Apt. 3**
**Norfolk, Virginia 23504**

**and**                                                    CIVIL ACTION NO. _____

**BLAKE BULLOCK**                                          *JURY TRIAL DEMANDED*
**1509 Brittle Drive**
**Suffolk, Virginia 23434**

**v.**

**XYLEM TREE EXPERTS, INC.**
**208 E. Plume Street, Ste. 250**
**Norfolk, Virginia 23510**

      **Defendants.**

## COMPLAINT

The Plaintiffs, Evan Vargo, James Cox, Kenneth Stewart and Blake Bullock, for themselves, individually and on behalf of all similarly situated current and former employees of Xylem Tree Experts, Inc., hereby state as follows for their Complaint:

## NATURE OF THE CASE

1. This action arises under the Fair Labor Standards Act of 1938, as amended (the "Act"), 29 U.S.C. § 201 *et seq.*

2. Plaintiffs are former employees of Xylem Tree Experts, Inc. ("Xylem" or "Defendant") who from and before June 15, 2015, to the present time have not received all regular and overtime compensation due to them under the Act. Plaintiff Evan Vargo asserts claims for retaliation in violation of the Act. Vargo opposed the practices set forth herein and suffered significant adverse employment actions.

3. The Defendant suffered or permitted, and continue to suffer or permit, Plaintiffs to work hours in excess of forty (40) during their work weeks without compensating them as required under the Act.

4. Former and current employees may file written consents to join this representational action. Each of the named Plaintiffs have previously filed their written consents to join this action.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.

6. The Defendant does business and resides within the Norfolk Division of the Eastern District of Virginia and maintains its principal place of business at 208 E. Plume Street, Suite 250, Norfolk, Virginia 23501. Venue is proper in this District and Division pursuant to 28 U.S.C. § 1391(b) and Eastern District of Virginia Local Rule 3.

## PARTIES

7. Evan Vargo is a citizen of the United States and a resident of the Commonwealth of Virginia. He maintains his principal residence at 3115 Joyners Bridge Road, Carrsville, Virginia 23315. At all times relevant to his unpaid wages claim he was employed as a truck driver, laborer and crew chief by Defendant.

8. James Cox is a citizen of the United States and a resident of the Commonwealth of Virginia. He maintains his principal residence at 122 Spivey Farm Lane, Suffolk, Virginia 23438. At all times relevant to his unpaid wages claim he was employed as a truck driver and laborer by Defendant.

9. Kenneth Stewart is a citizen of the United States and a resident of the Commonwealth of Virginia. He maintains his principal residence at 2807 Victoria Avenue, Apartment # 3, Norfolk, Virginia 23504. At all times relevant to his unpaid wages claim he was employed as a truck driver, laborer and crew chief by Defendant.

10. Blake Bullock is a citizen of the United States and a resident of the Commonwealth of Virginia. He maintains his principal residence at 1509 Brittle Drive, Suffolk, Virginia 23434. At all times relevant to his unpaid wages claim he was employed as a truck driver, laborer and crew chief by Defendant.

11. Xylem Tree Experts, Inc. is a Virginia corporation and conducts substantial business within the Commonwealth of Virginia.

## FACTUAL ALLEGATIONS

12. The Plaintiffs were employed by Defendant as truck drivers, laborers and crew chiefs.

13. The Defendant operated under contracts with the Virginia Department of Transportation ("VDOT") and other public and private entities to perform residential and commercial tree cutting services, clear lines and provide tree trimming services, perform VDOT right-of-way vegetation management, perform brush mowing services and provide disaster recovery services.

14. While employed by Defendant, Plaintiffs typical work day went as follows:

a) In the morning, Plaintiffs were required to travel in personal vehicles to various sites throughout the Commonwealth where Xylem trucks were located ("Xylem Truck Sites"). The location of these sites constantly changed and Xylem managers would use various methods to communicate with Plaintiffs where to arrive in the morning.

b) When Plaintiffs arrived at Xylem Truck Sites, Plaintiffs were required to perform certain services at the sites and on the trucks in order to prepare them for use, including, but in no way limited to the following:

    i. opening the hood of the truck and checking fluid levels of oil, antifreeze, hydraulics;

    ii. starting the truck;

    iii. engaging the power takeoffs (PTOs);

    iv. climbing up on top of the truck where the boom - basket attached to an arm that raises and lowers the basket - controls are located and dropping the boom all the way down (the basket is left up at night to store equipment in a place where it cannot be stolen);

    v. taking equipment out of the boom and storing it in the truck in preparation for transit;

        vi.      switching the boom lever to outriggers mode which allows you to raise the outriggers so you can drive; and

        vii.     raising the outriggers in preparation for commute to assigned worksite.

    c)     Additionally, once at the Xylem Truck Sites, Plaintiffs would receive their instructions from Xylem management regarding where to take the trucks to perform work. Once Plaintiffs were notified of the assigned location for each work day, and once Plaintiffs completed the above-referenced services on the trucks, Plaintiffs would load onto the trucks and drive to the assigned work site.

    d)     Occasionally, Plaintiffs would be required to remain at the Xylem Truck Sites and wait for bad weather to clear at the assigned work site before Plaintiffs were allowed to proceed to the assigned work site.

    e)     When Plaintiffs arrived at the assigned work site, Plaintiffs performed considerable work preparing the site, including, but in no way limited to, assessing the sight for safety issues, setting up set up road cones to shut down certain lanes, putting out signs that indicate roadwork is being performed several miles ahead, putting out warning signs that indicate that the right and/or left lane is closed, setting up lane merger cones to close down a lane (hereinafter collectively referred to as "Site Preparation Work").

    f)     In the case of setting up lane merger cones, Plaintiffs would set-up approximately one-half mile worth of cones, placing one cone on each white lane line for each lane closure.

g) When Plaintiffs finished the Site Preparation Work they were allowed to sign-in to the assigned site, at which point Plaintiffs were considered "on the clock" by Xylem management. It was only at this point in the day that Plaintiffs began to receive pay.

h) After clocking in to the assigned site, Plaintiffs would generally work between 8 and 12 hours a day depending on the time of year. When the daylight lasted a longer period time, Plaintiffs would typically work three days of 12 hour shifts and one day of a 4 hour shift each week for a total of 40 hours per week. When the daylight lasted a shorter period of time, Plaintiffs would typically work five days of 8 hour shifts each week for a total of 40 hours per week.

i) At the conclusion of each shift Plaintiffs would sign out while at the site. Plaintiffs were officially considered "off the clock" by Xylem management after they signed out.

j) After Plaintiffs signed out of the assigned site they would perform addition work at the assigned sight in order to close down the site, including, but in no way limited to, reopening roads, removing cones, cleaning and clearing site of debris and stowing equipment (hereinafter collectively referred to as "Site Closure Work").

k) When Plaintiffs had completed Site Closure Work, Plaintiffs would load into Xylem work trucks and commute back to Xylem Truck Sites. Occasionally, Xylem management would contact Plaintiffs while they were commuting back to Xylem Truck Sites and divert them to an emergency site requiring Plaintiffs to perform additional work. Plaintiffs would "check in" when they arrived at the emergency site and "clock out" when they departed the emergency site to return to the Xylem Truck Sites. Plaintiffs only received pay for the time they were "checked in" at the emergency site. Plaintiffs did not receive pay for the time it took

to commute to the emergency site from the work site. Plaintiffs did not receive pay for the time it took to commute from the emergency site to the Xylem Truck Sites.

          l)       After arriving at the Xylem Truck Sites at the end of each day, Plaintiffs would perform addition work shutting down, stowing and securing Xylem trucks. After Xylem trucks were secured, Plaintiffs would load into their personal vehicles and commute home.

15.    At all times material to this cause of action, Plaintiffs were all paid for work done while on the clock at the assigned site, but were not paid for very significant preliminary and postliminary work.

16.    At all times material to this cause of action, Plaintiffs were not paid for work done at the Xylem Truck Sites.

17.    At all times material to this cause of action, Plaintiffs were not paid for time spent commuting from Xylem Truck Sites to the assigned site for that day.

18.    At all times material to this cause of action, Plaintiffs were not paid for performing Site Preparation Work.

19.    At all times material to this cause of action, Plaintiffs were not paid for performing Site Closure Work.

20.    At all times material to this cause of action, Plaintiffs were not paid for time spent commuting from the assigned sites back to Xylem Truck Sites at the end of the work day.

21.    At all times material to this cause of action, Plaintiffs were not paid for time spent commuting from assigned sites to emergency sites.

22.    At all times material to this cause of action, Plaintiffs were not paid for time spent commuting from emergency sites to Xylem Truck Sites.

23. At all times material to this cause of action, Plaintiffs were not paid for time spent shutting down Xylem Trucks, placing equipment in the boom, raising the boom, lowering the outriggers, and securing Xylem trucks at the Xylem Truck Sites at the end of the work day.

24. The Plaintiffs were paid on an hourly basis.

25. The Plaintiffs were non-exempt under the Act.

26. Each of the Plaintiffs regularly worked in excess of 40 hours per week for Defendant without overtime compensation as required by the Act.

27. The average hourly rate that was paid to each Plaintiff was at least $12.25 per hour. The average Plaintiff worked at least 8 hours of overtime per week and often much more. As a result, on average, each Plaintiff was paid at least $147.04 per week less than the sum to which they were entitled (overtime hourly rate of $18.38 x 8). This figure is an estimated minimum, in other words many and perhaps most of the Plaintiffs are entitled to a significantly greater amount.

28. The precise amount of compensation due each Plaintiff is unknown because the information required (i.e., time records, driving records, etc.) are within the exclusive control of Defendant.

29. The Defendant's supervisors and managers actually observed the Plaintiffs working substantial uncompensated overtime on a routine basis. Moreover, the Defendant's record-keeping system and directives will demonstrate that the Plaintiffs worked substantial uncompensated overtime with the Defendant's actual knowledge.

30. The Defendant knew or showed reckless disregard for the fact that their pay policies violated the Act, and they committed the aforesaid violations willfully, recklessly and in bad faith.

31. Excluding liquidated and/or statutory damages, fees, interest and costs, the Defendant owes each Plaintiff, on average, not less than $6,616.80 which has gone unpaid over the last three years.

32. On or about June 15, 2015, Plaintiff Evan Vargo began to complain to managers at Xylem of their failure to credit hours worked to various laborers, truck drivers and crew chiefs.

33. The Defendants retaliated against Vargo for taking the actions set forth in paragraph 31, above, by decreasing his hourly pay from $16.00 per hour to $12.00 per hour without notice, effectively destroying his career with the Defendant. This action was intended to make his work conditions intolerable in an effort to force him to quit. Indeed, Vargo found the retaliation intolerable and left the company.

34. The Defendant's actions in retaliating against Vargo as set forth above were willful and malicious.

## COUNT I

*Failure to Pay Overtime in Violation of the Fair Labor Standards Act*

35. All allegations set forth in this Complaint are incorporated into this Count by reference.

36. This Count is asserted on behalf of all named Plaintiffs and all similarly situated employees of Xylem.

37. The Defendant failed to pay Plaintiffs overtime wages at one and one-half times their regular rate of pay as required by the Act.

38. As a direct, actual and proximate result of the Defendant's conduct, each of the Plaintiffs have suffered significant economic loss as set forth herein.

**WHEREFORE**, Plaintiffs respectfully move this Court to enter judgment in their favor and award the following relief:

1) Pursuant to the procedure of the United States Supreme Court set forth in *Hoffman-Larouche v. Sperling*, 493 U.S. 165, 110 S.Ct. 482 (1989) certify this case as a representational action;

2) An award of all overtime compensation due for all hours worked during the three years before the filing of this Complaint to the present date;

3) An award of an equal and additional amount as liquidated damages;

4) Plaintiffs' costs and reasonable attorney's fees;

5) Interest accruing from each week compensation was not paid;

6) All such other relief as the Court deems appropriate under the circumstances.

## COUNT II

*Retaliation in Violation of the Fair Labor Standards Act*

39. All allegations set forth in this Complaint are incorporated into this Count by reference.

40. This count is asserted on behalf of Plaintiff Evan Vargo.

41. Vargo complained of the pay practices described herein on numerous occasions. As a direct, actual and proximate result of his complaints and protected activity, Vargo was constructively terminated when his salary was decreased from $16.00 per hour to $12.00 per hour on or about March 25, 2016, in retaliation for his complaints relating to the violations of law described in this Complaint.

42. As a direct, actual and proximate result of Defendant's conduct, Plaintiff Vargo has suffered significant pecuniary and non-pecuniary damages including loss of pay, back pay

and front pay, loss of benefits, pain, suffering, humiliation, mental anguish, anxiety and loss of quality of life.

**WHEREFORE,** Plaintiff Evan Vargo respectfully moves this Court to enter judgment in his favor for unlawful retaliation in violation of the Fair Labor Standards Act and award the following relief:

1) An award of all economic damages he has suffered including back pay, front pay and loss of benefits;

2) An award of an equal and additional amount as liquidated damages;

3) An award sufficient to make him whole for all non-economic damages he has sustained including all pain, humiliation, suffering, frustration, anxiety and loss of quality and enjoyment of life;

4) An award of all costs and reasonable attorney's fees;

5) An award of punitive damages sufficient to deter this conduct in the future;

6) All such other relief as the Court deems appropriate under these circumstances.

## JURY TRIAL DEMANDED

The Plaintiffs request a jury trial on all issues raised in this Complaint.

**EVAN VARGO, ET AL**

By: ____*/s/ James H. Shoemaker, Jr.*____
Of Counsel

James H. Shoemaker, Jr., VSB No. 33148
Andrew J. Dean, VSB No. 88192
Patten, Wornom, Hatten & Diamonstein, L.C.
12350 Jefferson Avenue, Suite 300
Newport News, Virginia 23602
Telephone: (757) 223-4580
Facsimile: (757) 223-4518
Jshoemaker@pwhd.com
adean@pwhd.com